# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA
# INDIANAPOLIS DIVISION

| | |
|---|---|
| JEFFREY A WHITLOCK, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 1:18-cv-01386-TWP-TAB |
| MENARD, INC., | ) |
| Defendant. | ) |

## ENTRY GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on Defendant Menard, Inc.'s ("Menard") Motion for Summary Judgment (Filing No. 24). Plaintiff Jeffrey A. Whitlock ("Whitlock") filed this negligence action seeking damages, after he slipped on a piece of debris and suffered injuries while shopping at a Menard's retail store. (Filing No. 1-1.) For the reasons explained below, the Court **grants** Menard's Motion for Summary Judgment.

## I. BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to Whitlock as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Menard owns and operates a big box retail store in Lafayette, Indiana, located at 2850 South Creasy Lane. (Filing No. 7.) Whitlock, a resident of Lafayette, visited the Creasy Lane store twice on April 25, 2016. At approximately 10:00 a.m., he visited the store and purchased gloves and a tree saw. (Filing No. 26-4 at 28-29.) During that visit he did not observe any foreign objects or hazards in the front of the store near the customer service counter. *Id.* at 30-31.

Later that day, Whitlock returned to the store at approximately 4:00 p.m. to exchange the package of gloves that he had purchased earlier for another package. He entered the store through the main entrance and went to the customer service counter.[1] *Id.* at 31-32. Whitlock then returned to the section of the store where he had found the gloves earlier that morning. As he walked from the customer service counter to retrieve the replacement gloves, he walked within ten feet of the spot where he ultimately slipped and did not notice a piece of debris on the floor. *Id.* at 37, 43. After retrieving the package of gloves, he walked back to the customer service counter along the same general path and conducted his business at the customer service counter. *Id.* at 41, 44. As he went to exit through the store's main entrance, Whitlock slipped and fell on "a very slick piece of something" that appeared to be a piece of door moulding. *Id*. at 23-25. Whitlock estimates that he was in the store twenty to twenty-five minutes before his fall. *Id*. at 38-40.

The moulding that Whitlock slipped on was white, matching the color of the store's linoleum floor. (Filing No. 26-6, Filing No. 26-4 at 48.) He estimates that the piece of moulding was about 4" long and 2 1/2" wide. (Filing No. 26-4 at 35.) Whitlock had no idea what caused the loose piece of molding to be on the floor or how long it had been there. (Filing No. 26-4 at 55.)

Two security camera videos provide clips of Whitlock in the store at the time of his slip and fall. (Filing No. 26-3.) The first video is a close view from behind the cash register at the customer service counter. *Id.* Whitlock enters the frame with a plastic bag in hand and waits in line at the customer service counter. He is summoned by a cashier to a different register at the customer service counter, and he exits the frame to the right, then walks back through the frame with his bag. The video then shows Whitlock approaching the counter again with two packages

---

[1] Menard designated a blank floorplan of the store at Filing No. 26-8. It also designated a floorplan marked by Whitlock during his deposition to show where he entered the store, the section of the store where he found the gloves (marked with a red circle), the customer service counter (marked with a black "X"), and the area where he slipped and fell (marked with a blue "X"). (Filing No. 26-5.)

of gloves. A Menard's employee processes his exchange, and Whitlock exits the frame once again. The slip and fall is not shown on this first video, but it does show a different Menard's employee jumping over a low part of the customer service counter to attend to Whitlock after he fell.

The second video shows a wider view, capturing part of the customer service counter and the entire entrance to the store. This video shows Whitlock walk into the frame from the right side and then slip and fall on the floor in the entrance area of the store. Whitlock was the only customer at the customer service counter area at the time of the fall. Two Menard employees come to his aid, and he is eventually accompanied out of the store by what appears to be medics who have arrived on scene. The piece of debris that Whitlock slipped on is not visible in this video. The store does not appear to be busy with a high volume of guests in either video.

After the fall, Whitlock was transported to Indiana University Arnett Hospital's emergency room by ambulance. ([Filing No. 26-4 at 53](Filing No. 26-4 at 53).) As a result of the fall he sustained injuries to his right shoulder, right hip, and lower back. *Id.* at 13-14. At the hospital, Whitlock had X-rays taken and according to Whitlock, those X-Rays "basically were negative." *Id.* The doctor he saw that day "did not diagnose him with anything." *Id.* at 54. However, approximately three days after the fall, Whitlock saw his primary care physician, who referred him to an orthopedic specialist. *Id.* at 60. The specialist recommended physical therapy and prescribed oral medication to manage Whitlock's pain. *Id.* at 60-61.

At the time of the fall, Whitlock worked part-time inserting advertisements and various other inserts into the Lafayette Journal & Courier. *Id.* at 8. He missed four days of work after the fall (*Id.* at 63), and his injury also "changed the process that [Whitlock uses] to perform [his] job." *Id.* at 21. Whitlock has been unable to do certain hobbies and household activities became difficult to perform after he sustained injuries from the fall. *Id.* at 14-17.

3

On the date Whitlock fell, as part of Menard's standard operating procedure after an incident, a Menard front end manager, Yolanda Lozinski[2], filled out a General Liability Notice of Occurrence/Claim form. ([Filing No. 58-8 at 7](#).) In the "DESCRIPTION OF ACCIDENT" field, the manager wrote:

> GUEST WAS WALKING OUT THE ENTRANCE DOOR AND SLIPPED ON A "T " (sic) SHAPED PIECE OF WOOD. FELL AND CLAIMS HE HURT HIS RIGHT SHOULDER AND HIP. THE VIDEO FOOTAGE SHOWS THE GUEST WALK INTO THE STORE 8 MINUTES PRIOR AND LOOKS AT THE PIECE OF WOOD ON THE FLOOR THEN SLIPS ON IT ON THE WAY OUT.

*Id*.

Menard has not designated a written policy or procedure regarding detection or removal of debris and/or foreign objects from the floor of the store; however, employees are trained and/or required to monitor the aisles and floors for hazards and to immediately remedy any hazard they may see or encounter. ([Filing No. 26-1 at 4](#), ¶11; [Filing No. 26-2 at 4](#), ¶12.)

On April 24, 2018, Whitlock filed a Complaint in the Marion Superior Court and on May 4, 2018, Menard removed the action to federal court. ([Filing No. 1-1](#).) Menard filed a Motion for Summary Judgment on May 2, 2019. ([Filing No. 24](#).) Whitlock responded on September 6, 2019, and designated certain evidence, among which was the Affidavit of H. Richard Hicks ("Hicks"), a registered professional engineer who has no firsthand knowledge of the accident but who has reviewed depositions, surveillance videos, and other evidence relevant to the case. ([Filing No. 57](#); [Filing No. 58-4](#).) On October 21, 2019, Menard filed a Reply in Support of Motion for Summary Judgment and Motion to Strike Expert Affidavit. ([Filing No. 61](#).) The next day, Menard filed an amended Reply in Support of Motion for Summary Judgment which contains an objection to Hicks' affidavit. ([Filing No. 64](#)). Whitlock filed a Surreply on October 28, 2019. ([Filing No. 65](#).)

---

[2] The Claims Form contains the name of "Yolanda Lozinsk". The parties believe this form was completed by Yolanda Lozinski. Ms. Lozinski is a former employee of Menard. ([Filing No. 64 at 5](#), fn 3.)

## II. LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). A disputed fact must be "material," which means that it might affect the outcome of the case under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts do not preclude summary judgment. *Id.* A genuine dispute of material fact exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id. at 249*.

In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate

citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

## III.    DISCUSSION

Menard asserts that the designated evidence shows it had no actual or constructive knowledge of any hazard prior to Whitlock's fall and, accordingly, it did not breach its duty to exercise reasonable care and thus, is entitled to summary judgment as a matter of law. In response, Whitlock asserts that summary judgment fails on three grounds. First, he contends there are disputes of material fact, including whether Menard had actual or constructive notice of the hazard, and these disputed material facts warrant a trial. Second, he argues that summary judgment is rare under Indiana negligence law. Third, Whitlock asserts that Menard spoilated material evidence requiring a negative inference against Menard which precludes summary judgment. The Court will first address the negligence standard under Indiana law.

### A.    Indiana Negligence

The Court's jurisdiction over this matter is based on diversity pursuant to 28 U.S.C. § 1332, therefore, substantive principles of state law apply to Whitlock's claim. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 527 (1996). Under Indiana law, a negligence action contains three elements. *City of S. Bend v. Dollahan*, 918 N.E.2d 343, 352 (Ind. Ct. App. 2009). To succeed on his negligence claim, Whitlock must establish that: (1) Menard had a duty to conform its conduct to a standard of care arising from its relationship with him, (2) Menard failed to conform its conduct to that standard of care, and (3) Whitlock sustained an injury proximately caused by Menard's breach. *Id.* Regarding the first element, it is undisputed that Whitlock was a business invitee of Menard, therefore, Menard owed him a duty to exercise reasonable care for his

protection. *Schulz v. Kroger Co.*, 963 N.E.2d 1141, 1144 (Ind. Ct. App. 2012) (citing *Burrell v. Meads*, 569 N.E.2d 637, 642 (Ind. 1991)). Menard would breach this duty only if it:

> a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees; and
>
> b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it; and,
>
> c) fails to exercise reasonable care to protect them against the danger.

*Burrell*, 569 N.E.2d at 640 (quoting (Restatement (Second) of Torts § 343 (1965)). "As an invitor is not the insurer of the invitee's safety, and before liability may be imposed on the invitor, it must have actual or constructive knowledge of the danger." *Schulz* at 1144 (citing *Carmichael v. Kroger Co.*, 654 N.E.2d 1188, 1191 (Ind. Ct. App. 1995), *trans. denied*).

Menard's sole argument is that there are no genuine disputes of material fact that it had no actual or constructive knowledge of the moulding hazard prior to Whitlock's fall. It asserts that "[b]ecause Menard had no actual or constructive knowledge of the moulding, Plaintiff's negligence claim against Menard fails as a matter of law." (Filing No. 25 at 12-13.)

Whitlock on the other hand, argues there are disputed issues of material fact concerning whether Menard had constructive knowledge of the hazard, and the factual determination of whether or not there was constructive knowledge is inappropriate for resolution at summary judgment. (Filing No. 57 at 19.) In particular, Whitlock contends that

> (1) Menard had actual knowledge that there was a reoccurring hazard in the customer service desk area because customers who were returning and exchanging items dropped objects on the floor in the area of the guest service desk once a day, and left objects on the floor in this area at least once a week, (2) Menard failed to take any remedial measures such as written procedures and policies as described by expert Mr. Hicks to detect and remove these hazards, and (3) there is a dispute of fact regarding how long the moulding in question was on the floor before Mr. Whitlock's fall as well as whether Menard's employees could and should have detected and removed this hazard before this accident if they had used reasonable and ordinary care.

7

*Id.* Whitlock also argues that Menard failed to preserve relevant video surveillance footage showing his fall and the time before and after it. The Court will discuss whether any of these arguments show constructive knowledge.

**B.** **<u>Constructive or Actual Knowledge</u>**

"Constructive knowledge is defined as a "condition [which] has existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if the storekeeper, his agents or employees had used ordinary care." *Johnson v. Blue Chip Casino, LLC*, 110 N.E.3d 375, 379 (Ind. Ct. App. 2018) (citing *Schulz* at 1144). Importantly, Indiana law does not impose strict liability on invitors to avoid all hazards. In *Schulz*, the Indiana case most analogous to this one, the Indiana Court of Appeals affirmed a trial court's finding that Kroger grocery store did not have constructive knowledge of standing liquid in its store that caused a slip and fall. (963 N.E.2d 1141.) The designated evidence in *Schulz* showed that Kroger employees had been in the area of the store ten minutes prior to the slip and fall and did not notice any foreign substances or potential hazards on the floor. *Id.* at 1145. Kroger had a similar policy of upkeep and tidiness that Menard had in its Lafayette store—employees are trained to monitor the area around them and remedy hazards as they come upon them.[3] Because an employee was in

---

[3] Kroger had the following store policy at the time of the slip and fall at issue in *Schulz*:

> Its management team continually monitors and inspects store floor surfaces in order to keep them safe and free of any hazardous conditions. Additionally, all Kroger employees are charged with the duty to inspect, maintain, and monitor store floors for the presence of any potentially hazardous condition. In the event a Kroger employee observes or is notified of the presence of any foreign substance(s) or hazard(s) on the floor, such employees are trained and instructed to (a) immediately pick up/clean up the foreign substance(s); (b) immediately place signs/cones to alert customers of the foreign substance(s) and of the potential danger created by the foreign substance(s); or (c) immediately notify management of the potentially dangerous situation.

*Schulz* at 1145. Menard's policy at the time of Whitlock's fall, as related by its employees, was:

> Menard employees are trained to monitor [the area in front of the customer service counter] to ensure that carts are properly returned and any returned items or inventory is restocked. Menard employees are also trained to monitor the aisles and floors for hazards and to immediately remedy any hazard

8

the area within ten minutes of the slip and fall, and the employee had observed the floor to be clean and dry, the court in *Schulz* determined there was no issue of material fact on the question of whether Kroger had constructive knowledge of the hazard. *Id*. The *Schulz* court determined "[s]hort of mandating an employees presence in every aisle at all times, we conclude that there is no genuine issue of fact…that Kroger did not have constructive knowledge of the hazardous condition." *Id*.

Menard asserts that one of its employees, Diane Hill ("Hill"), continuously monitored the area where Whitlock fell, that she was in the immediate area in which Whitlock fell within ten minutes of his fall, and that at the time of his fall, Hill was just behind the customer service counter, approximately fifteen to twenty feet away from the spot where Whitlock fell. (Filing No. 25 at 9; Filing No. 26-2 at 3-4.) Hill testified that she observed no debris or hazards. Whitlock disputes this evidence, alleging it is contradicted by Hill's deposition testimony that she has no personal knowledge of the hour before the fall, and by the security footage. (Filing No. 57 at 5; Filing No. 58-3 at 41.) He contends "there is a dispute of fact regarding how long the moulding was on the floor" before his fall. (Filing No. 57 at 29.) Menard contends that this dispute of fact is not material because neither Whitlock or any employee testified that any hazard was observed on the floor long enough for it to have constructive knowledge.

In his deposition, Whitlock concedes that he also had "no idea" how the object came to be on the floor or how long it might have been there, admitting it could be as little as thirty seconds. (Filing No. 26-4 at 55-56.) Surveillance video 2 depicts a wide view of the area where Whitlock

---

        they may see or encounter…. It was not common for there to be any hazards in any of the floors or aisles at the Lafayette Store including any of the exits and entrances. On those occasions when there is a hazardous condition, it is common for the store guests to report the hazard to Menard employees or management so the hazard may be rectified immediately.

(Filing No. 26-1 at 4.)

slipped, but it begins only 20 seconds before his fall and does not show any customer activity before that. (Filing No. 26-3.) Regardless, as Whitlock himself testified, "...If you look at it, it's white, and it's the same color as the linoleum. So it's almost camouflaged, which makes it much, much more difficult to see." (Filing No. 26-4 at 48.) The Court notes again that it cannot make out the piece of moulding on the grainy surveillance video. Whitlock argues that there are missing videos which he believes might depict the area for a longer period of time. However, even a video showing what happened in the 30 minutes prior to Whitlock's fall might be insufficient to reveal how long the piece of moulding had been on the floor because the white moulding is imperceptible against the white linoleum floor. This designated evidence suggests that no one knows how long the moulding had been on the floor.

Whitlock asserts that the General Liability Notice of Claim/Occurrence form indicates the piece of wood was on the floor of the customer service counter area for at least eight minutes. (Filing No. 57 at 29 (citing Filing No. 58-8 at 7).) Although the context of this statement on the form is unclear, it does allow a reasonable reader to come to this conclusion. The form states that Whitlock walked into the store "eight minutes prior and looks at the piece of wood on the floor then slips on it on the way out." (Filing No. 58-8 at 7.) A reader could conclude from this sentence that Whitlock looked at the piece of wood when he entered the store, eight minutes prior to his fall, or that he looked at it just before he exited the store and then slipped on it on the way out. At this stage of the proceedings, the Court accepts this evidence in the light most favorable to Whitlock, and considers that the Menard employee who filled out the form is able to see the loose moulding on the floor in a video, eight minutes before Whitlock fell. However, evidence that the hazard was present eight minutes before Whitlock slipped on it is insufficient to show constructive knowledge, because the Indiana Court of Appeals has said that even a hazard that sits unnoticed

for ten minutes is not enough to establish constructive knowledge on the part of an invitor. *Schulz*, 963 at 1145. There is no designated evidence that indicates the moulding was on the floor for more than ten minutes. Stated differently, there is no designated evidence to show the condition [a piece of white moulding on the white floor] existed for such a length of time and under such circumstances that it would have been discovered in time to have prevented injury if Menard or its employees had used ordinary care.

Whitlock also argues that "Menard had actual knowledge of a recurring dangerous condition in the customer service desk area" and that it failed to take remedial action to address that recurring danger. ([Filing No. 57 at 19-26](#).) He argues that his case is similar to *St. Mary's Med. Ctr. of Evansville, Inc. v. Loomis*, 783 N.E.2d 274, 280–281 (Ind. Ct. App. 2002) and *Lauray v. Menard, Inc.*, No. 1:16-CV-00929-DML-SEB, 2018 WL 1124566 (S.D. Ind. Mar. 1, 2018). In *Loomis*, twelve hospital employees testified that they had seen ice or water occasionally on the floor in the pantry where Loomis fell, and that the hazard could have been remedied by the placement of a non-slip mat. *Lauray* involved unsecured floor mats that would become folded or crumpled due to use of carts or customer traffic. The Menard's employees in *Loomis* kept a lookout for the mats bunching or buckling, and straightened out the mats when they saw it was necessary, but there was no evidence that Menard took any other steps to correct the condition of the mats.

As a recurring condition, Whitlock cites the deposition of a Menard's employee Melissa Benham ("Benham") who stated that in the two years prior to Whitlock's fall she witnessed customers drop and then pick up items in front of the customer service desk area about once each day. ([Filing No. 57 at 8](#) (citing [Filing No. 58-1 at 11-12](#))). When asked had she ever seen a customer drop and item and leave it behind, Benham responded "rarely" because she wasn't there all the time and "maybe, let's say once a week" a customer would fail to pick up a dropped object.

*Id*. The doctrine of recurring condition is limited to circumstances where prior knowledge "that the specific condition at issue, though transitory, is a part of a known and continuing or recurrent condition." *Hetzel v. Jewel Companies*, 457 F.2d 527, 530 (7th Cir. 1972), overruled by *United States v. Hollinger*, 553 F.2d *535* (7th Cir. 1977). Even if Menard's employees knew hazards were *possible* does not mean that they knew a hazard had actually materialized in the location where Whitlock fell. *See Austin v. Walgreen Co.*, 885 F.3d 1085, 1088-89 (7th Cir. 2018).

In *Austin*, a Walgreen store manager admitted that "when there was snow outside, as there was on the day in question, customers could track snow into the store and create potentially hazardous situations." *Id*. The court determined that knowledge that those hazards *could occur* at any moment "does not automatically impute instantaneous knowledge of when those hazards come about." *Id.* at 1089. There are many potential hazards that could exist in a store like Menard. As argued by Menard, in *Austin*, the Seventh Circuit rejected application of the recurring hazard doctrine to knowledge of non-specific hazards. The court explained that the law does "not hold [a storeowner] strictly liable for a fall occurring before [it] even had a chance to remove the foreign substance from the floor." *Id*. at 1088–89.

Considering the evidence in the light most favorable to Whitlock, the Court accepts that the hazard may have been present for eight minutes, however, there is no designated evidence as to how long the white moulding actually laid on the floor or that the hazard was recurring. Unlike the buckling matt in *Laury* or the recurring puddle in *Loomis*, Whitlock conceded that the white moulding on the white floor was difficult to detect and no one has testified how long it was on the floor prior to the fall. Only speculation supports Whitlock's assertion that the piece of moulding was on the floor for a significant length of time before he slipped on it. Without designated

evidence showing Menard had a chance to respond to the hazard, Whitlock cannot establish knowledge of a recurring hazard.

Finally, Whitlock's argument that summary judgment is rarely appropriate in negligence cases decided under Indiana law is not persuasive. (Filing No. 57 at 17-19.) Premises liability cases are frequently decided at the summary judgment stage in Indiana. *See, e.g., Schulz*, 963 N.E.2d 1141; *Austin*, 885 F.3d 1085; *Gasser Chair Co., Inc. v. Nordengreen*, 991 N.E.2d 122 (Ind. Ct. App. 2013) (remanded on other grounds); *Herrera v. BP Prods. N. Am., Inc.*, 2016 WL 1222228 (N.D. Ind. Mar. 28, 2016). Whitlock cites *Golba v. Kohl's Dept. Store, Inc.*, 585 N.E.2d 14, 15 (Ind. Ct. App. 1992) in support of his assertion that "[t]he determination of whether Menard exercised reasonable care in making its premises safe for Mr. Whitlock is ordinarily a question of fact for the trier of fact." (Filing No. 57 at 19.) *Golba* may control a state court, but the standard for summary judgment is different in this Court, as the Indiana Supreme Court has discussed:

> Indiana's summary judgment procedure abruptly diverges from federal summary judgment practice. Under the federal rule, the party seeking summary judgment is not required to negate an opponent's claim. The movant need only inform the court of the basis of the motion and identify relevant portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." The burden then rests upon the non-moving party to make a showing sufficient to establish the existence of each challenged element upon which the non-movant has the burden of proof.

*Jarboe v. Landmark Cmty. Newspapers of Ind., Inc.*, 644 N.E.2d 118, 123 (Ind. 1994) (citing *Celotex Corp.*, 477 U.S. 317, 323 (1986)).

Whitlock's comparison to *Woodrow v. Wal-Mart Stores, Inc.*, 2019 WL 1489544 (S.D. Ind. Feb. 22, 2019) is unavailing as well. In *Woodrow*, the record contained evidence that a customer slipped on a foreign substance that a Wal-Mart employee failed to adequately clean up, and the record also contained evidence indicating the customer had created the hazard herself. *Woodrow* at *3-4. Here, the record does not contain *conflicting* evidence about how long the piece

13

of moulding had been on the floor before Whitlock slipped on it. It contains *no evidence at all* that the hazard was on the floor for more than eight minutes before Whitlock's fall, and thus the facts of this case distinguish it from *Woodrow*.

**C.      Spoliation**

Last, Whitlock asserts that "Menard deleted material video evidence of the guest service desk area, and the trier of fact will be entitled to infer that the deleted video was detrimental to Menard's case." ([Filing No. 57 at 30](#).) "Spoliation is a particular discovery abuse that involves the intentional or negligent destruction, mutilation, alteration, or concealment of physical evidence." *N. Ind. Pub. Serv. Co. v. Aqua Envtl. Container Corp.*, 102 N.E.3d 290, 300 (Ind. Ct. App. 2018) (internal quotation omitted). A party raising a claim of spoliation must prove that (1) there was a duty to preserve the evidence, and (2) the alleged spoliator either negligently or intentionally destroyed, mutilated, latered, or concealed the evidence. *Id.* at 301 (citing *Popovich v. Ind Dep't of State Revenue*, 17 N.E.3d 405, 410 (Ind. Tax Ct. 2014)). Indiana law gives trial courts "broad discretion to redress spoliation of evidence; its power to sanction spoliation is derived from its broad and inherent discretionary powers to issue evidentiary rulings and to manage the orderly and expeditious disposition of cases." *Id.* at 302.

Whitlock argues that Menard only preserved surveillance video that was beneficial to its legal defense. ([Filing No. 57 at 31](#).) Specifically,

> Menard deleted or otherwise failed to preserve: (1) a reasonable amount of video prior to Mr. Whitlock's fall from Video 1 and Video 2; (2) video surveillance footage described in the General Liability Notice of Occurrence/Claim form; (3) footage from two or three additional security cameras which captured Mr. Whitlock's fall, and (4) the Video Request Form.

*Id.* at 31-32.

Whitlock contends that immediately after his fall, "[a] Menard employee also filled out a Video Request Form to preserve surveillance video as part of Menard's standard operating procedure." *Id.* at 31. In support of this contention, Whitlock cites the following passage from the deposition of Hill, the Menard employee working at the time Whitlock fell:

> Q: What is a video request form?
>
> A: It's where we request to our corporate office, we're sending up the request to send it to us.
>
> Q: Who is required to fill out these forms following an accident?
>
> A: Front end managers or a general manager.
>
> Q: At the time of Mr. Whitlock's fall, who was the front end manager?
>
> A: Yolanda.
>
> Q: Immediately following Mr. Whitlock's fall, did Yolanda follow this procedure?
>
> A: I don't know. I believe so, but I don't know.

([Filing No. 58-3 at 30-31](#).) The Court does not view this passage as evidence that a video request form was filled out in this case. Hill testified that it is standard operating procedure for a front end manager to fill out a video request form after an accident, but when asked whether the front end manager did that in this case, she responded "I don't know." She speculates that the front end manager on duty filled out a video request form but does not attest to that fact.

Likewise, the Court finds no evidence in the record that Menard destroyed or spoiled relevant footage before or after Whitlock's fall or footage from two or three additional security cameras. Another Menard employee, Melissa Benham, gave the following deposition testimony:

> Q: What surveillance videos existed at the time of fall [sic] which showed the area where Mr. Whitlock fell?
>
> A: I have no idea.
>
> Q: Do you know how many security cameras there were that showed where Mr. Whitlock fell?

> A: I'm going to say four maybe. When I left in March, they did a whole remodel of the store. So there's cameras everywhere now, but at the time I believe there was [sic] four or five.
>
> Q: Four or five?
>
> A: Yeah. There could have been five that got it because there was like two that hang down by the registers that get the whole area, one by the door and two up top above the service desk.
>
> Q: And to clarify, you were talking about at the time of Mr. Whitlock's fall, correct?
>
> A: Correct.

(Filing No. 58-1 at 35-36.) Benham testified that four or five cameras may have captured the fall but admitted she did not review any footage. A different Menard employee clarified that:

> [c]urrently, Menard does have approximately six to eight cameras which capture footage of the area in which Plaintiff fell. However, at the time of Plaintiff's fall, Menard only had two cameras which captured footage in the customer service area in which Plaintiff fell. In 2018, Menard replaced these two cameras and installed additional cameras which record in and around the area in which Plaintiff fell.

(Filing No. 62-1 at 3.) The Court cannot find spoliation based on the speculation of an employee who admitted that she did not actually view any footage. Even if footage from additional cameras did exist, no evidence in the record indicates Menard acted intentionally or negligently by failing to preserve it. Thus, the Court is not persuaded by Whitlock's spoliation argument.

D.    **Objection to Affidavit of Plaintiff's Expert**

As a final matter, the Court will address Menard's objection to Hicks' affidavit. In their Reply brief, Menard objects to Hicks' designated testimony for several reasons. (Filing No. 64 at 18-20.) Menard asserts that as a professional engineer by training, Hicks is not qualified to offer testimony on retain industry standards for "big box stores" such as Menard. *Id*. In particular, Menard argues that Hicks' analysis of the surveillance videos, the claims form and his assertion that "there was enough time for Menard employees to have detected and picked up this object

before Mr. Whitlock's injury" is inadmissible testimony under Federal Rule Evidence 702(a)-(d) because it is not the product of any scientific principles nor is the analysis helpful to the trier of fact. *Id.*

Federal Rule of Evidence 702 permits expert testimony—defined as testimony regarding scientific, technical, or other specialized knowledge—if the testimony (a) is given by a person qualified as an expert by his knowledge, skill, experience, training, or education; (b) is sufficiently reliable—that is, it is based on "sufficient facts or data," (c) "is the product of reliable principles and methods," and (d) "the witness has applied the principles and methods reliably to the facts of the case." The *Daubert* two-step framework applies to determine whether the requirements of Rule 702 have been satisfied. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.,* 509 U.S. 579, 593–94 (1993). At step one the judge evaluates whether the expert's theory has been "(1) tested, (2) subjected to peer review and publication, (3) analyzed for known or potential error rate, and/or is (4) generally accepted within the specific scientific field." *Lapsley v. Xtek, Inc.*, 689 F.3d 802, 810 (7th Cir. 2012). At step two the judge evaluates "whether the proposed scientific testimony fits the issue to which the expert is testifying." *United States v. Hall,* 165 F.3d 1095, 1102 (7th Cir. 1999). The court serves as gatekeeper to weed out expert testimony that is not sufficiently reliable or relevant to issues in the case, or testimony offered by a person not sufficiently expert in the field of study that his testimony concerns. *Daubert* at 589. Determining whether expert testimony is sufficiently reliable for the fact-finder to consider requires a flexible approach, and courts have "great latitude in determining not only *how* to measure the reliability of the proposed expert testimony but also whether the testimony is, in fact, reliable." *United States v. Pansier,* 576 F.3d 726, 737 (7th Cir. 2009) (emphasis in original).

Hicks is a registered professional engineer with close to thirty (30) years of experience conducting investigations of slips, trips, and falls. (Filing No. 58-4.) He does not have personal knowledge of the accident, but he has inspected the Menard location where it occurred and reviewed footage and other evidence relevant to this case. *Id.* Hicks' affidavit summarizes the evidence he reviewed in this case and then opines that Menard's policies and procedures were inadequate to prevent accidents like the one in this case. *Id.* Specifically, Hicks opined that –

> Menard's failure to require the use and maintenance of floor inspection check sheets did not comply with reasonable standards for fall prevention programs, decreased Menard's ability to insure [sic] that the floor was inspected at regular and reasonable intervals, and was likely to increase the time debris and foreign objects would remain on the floor before being detected and removed by store personnel, thus increasing the likelihood of customer falls like the one experienced by Mr. Whitlock.

*Id.* at 10.

These opinions by Hicks are not particularly relevant to the issues in this case. Although there may not have been a written policy or check sheets, the designated evidence shows that employees were trained and required to inspect the floor and aisles and pick up any debris that they observed. In addition, Hicks' affidavit corroborates the other designated evidence showing that "the object that caused Mr. Whitlock's fall had been present on the floor … for at least an 8-minute period of time before his fall." (Filing No. 58-4 at 8.) Hicks' opinion that Menard's policies allowed "foreign objects like the one on which Mr. Whitlock slipped and fell [to] be present in the Menard's store without being detected for an indeterminate length of time", (*Id.* at 10), does not establish constructive knowledge. As explained above, the fact that Menard and its employees knew hazards were possible does not establish recurring knowledge of the specific hazard that caused Whitlock's injury.

Hicks' affidavit does not change the Court's determination on summary judgment. Even considering Hicks' affidavit, it does not offer any evidence to establish constructive knowledge

under Indiana law, which is an element of Whitlock's negligence claim. Because the affidavit in combination with the other designated evidence is insufficient to defeat Menard's Motion for Summary Judgment, the Court need not determine whether it complies with the Rule 702 at this stage of the proceedings. Menard's objection to Hicks' affidavit is **overruled as moot**.

### IV. CONCLUSION

The Court finds no evidence that Menard had actual or constructive knowledge of the hazard that caused Whitlock's fall. The Court further finds no evidence indicating that Menard intentionally or negligently spoiled video surveillance footage relevant to this litigation. Since it has negated an element of Whitlock's only claim, the Court **GRANTS** Menard's Motion for Summary Judgment ([Filing No. 24](#)). Final Judgment will follow in a separate order.

**SO ORDERED.**

Date: 1/6/2020

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Austin Andreas
LUDLOW LAW
austin@ludlowlaw.com

James F. Ludlow
ATTORNEY AT LAW
jludlow@ludlowlaw.com

Barry L. Loftus
STUART & BRANIGIN
bll@stuartlaw.com

David Matthew Stupich
STUART & BRANIGAN
dms@stuartlaw.com

Matthew K. Wollin
STUART & BRANIGIN LLP
mkw@stuartlaw.com